# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

SANTANA J GRAY,

        Plaintiff,

        v.

HATTFIELD,

        Defendant.

CASE NO. 3:25-CV-316-HAB-SJF

## OPINION AND ORDER

Santana J. Gray ("Gray"), a prisoner without a lawyer, is suing Indiana State Prison Officer Hunter Hattfield ("Defendant") for violating Gray's Eighth Amendment rights by pepper spraying him inside his cell and failing to relieve the pain caused by the pepper spray. (ECF 1). Defendant filed a motion for summary judgment, arguing Gray did not exhaust his remedies related to his claims because he failed to appeal his grievance. (ECF 15). That motion is now fully briefed and ripe for ruling. (ECF 16, 21, 22).

Because the Court agrees that Gray did not exhaust all administrative remedies available to him, Defendant's motion for summary judgment will be GRANTED.

## FACTUAL BACKGROUND

The summary judgment record consists of the Defendant's Statement of Material Facts (ECF 17, "SMF"), which references exhibits submitted by the Defendant. These exhibits include: an affidavit from Joshua Wallen ("Wallen"), the Grievance Specialist assigned to review Gray's grievances; a copy of the ISP's Grievance Process; a history of Gray's grievance records; and Wallen's responses to Gray's grievances. (ECF 15-1); (ECF 15-2); (ECF 15-3); (ECF 15-4–6). For his part, Gray's response did not formally comply with N.D. Ind. L.R. 56.1's requirement that

he directly respond to the SMF, but it did include some grievance records and an unsworn recitation of what he believes the records show. From these filings, the Court discerns the following facts:

During all relevant times, ISP had in place a Grievance Process available to all inmates at ISP. (SMF, ¶ 6). The Grievance Process requires an inmate to exhaust three time-sensitive steps before filing a lawsuit: (1) a formal grievance; (2) a written appeal to the Warden/designee; and (3) a written appeal to the Department Grievance Manager. (*Id*.) All three must be completed to fully exhaust the available remedies. (*Id*. ¶ 7).

To fully exhaust each step of the grievance process, an inmate must first submit "Offender Grievance" State Form 45471 within ten business days of the incident giving rise to the complaint. (*Id*. ¶ 9). Upon submission of the grievance form, it is reviewed within ten days and either accepted and logged in, or it is rejected and returned.[1] (*Id*. ¶ 11).  If the grievance is accepted, the assigned Grievance Specialist has fifteen business days to issue a response to the complaining individual. (*Id*. ¶ 14). If the Grievance Specialist fails to respond after twenty business days, the inmate can assume the grievance was denied and proceed to step 2 – an appeal to the Warden/designee. (*Id*.)[2]

If the Grievance Specialist timely responds and the inmate seeks to appeal the response, the inmate must fill out State Form 45473, "Grievance Appeal" within five business days after receiving the response. (SMF. ¶ 15). Once received, the Grievance Specialist logs the date of

---

[1] A grievance may be rejected if it is untimely or does not meet some other requirement. The inmate receives a Return of Grievance identifying the reasons for its rejection. When this occurs it is the responsibility of the inmate to make any revisions to the grievance form and return it within five business days. (SMF, ¶¶ 13-14).

[2] The Offender Grievance Process policy also states that if there is a delay in investigating the offender's grievance issues, the Offender Grievance Specialist may seek approval for a time extension with the request submitted to the Warden/designee. (ECF 15-2, Ex. A-1, P. 12). If the Offender Grievance Specialist receives an extension, then they shall notify the offender of the extension and its length in writing. (*Id*.) In this event, the time to appeal begins on the twenty-first (21st) business day after the grievance was recorded or at the end of extension approved by the Warden/designee. (*Id*.) This time frame may be waived and documented by the Offender Grievance Specialist if it is determined that there are valid reasons to do so. (*Id*.)

2

receipt and forwards the inmate's appeal to the Warden/designee. (*Id*. ¶ 16).[3] The Warden has ten business days from the date the appeal is received to complete their response and return it to the inmate. (*Id*. ¶ 17). If the inmate fails to receive a timely response or if the inmate is dissatisfied with the response, the inmate may initiate the third step of the process and appeal to the Department Offender Grievance Manager. (*Id*.) The decision of the Grievance Manager is final and marks the conclusion of the grievance process. (*Id*. ¶ 21).

Gray timely filed his first grievance on June 17, 2024, three days after the alleged incident. (SMF, ¶ 26). The grievance generally alleged that Defendant improperly deployed pepper spray against Gray during a "bed move" and then failed to take Gray to the prison's medical center. (*Id*.) Wallen returned Gray's grievance after discovering Gray improperly marked the "Date of Incident" section in the grievance form with two separate dates. (*Id*. ¶ 27). Gray then resubmitted a second grievance June 18, 2024, this time properly marking the "Date of Incident" with one date. (*Id*. ¶ 28). Wallen received this grievance on July 30, 2024.[4] (ECF 15-5, Ex. A-4, P. 1). He did not issue a timely response and Gray did not initiate the second step in the appeal process after he did not receive a timely response.

On October 22, 2024, Wallen resolved Gray's grievance against him, albeit belatedly. The "Response Notice" ("Notice") informed Gray that he could appeal Wallen's findings to the Warden within five business days. A box at the bottom of the Notice gives the inmate the option to "agree" or "disagree" and directs the inmate to sign and date the Notice. (ECF 15-5, at 1). Defendant's copy of the Notice has empty checkboxes. (*Id*.) Gray's copy of the Notice indicated

---

[3] The Grievance Specialist also sends the inmate a State Form 56285 "Receipt of Facility Level 1 Grievance Appeal" to inform them that the Warden/designee has received the inmate's appeal. (*Id*.)

[4] No explanation is given in the record as to why a grievance dated June 18, 2024, was not received by Wallen until July 30, 2024. *See* ECF 15-5 at pp. 1-2.

3

that Gray "disagreed" with the Notice's findings. (ECF 21-1, Ex. B, P. 2). But even assuming Gray's version of the Notice is the correct one, the record does not contain any evidence that Gray at any time submitted State Form 45473, "Grievance Appeal."

But this was not the end of things. Months went by before, on May 14, 2025, Gray requested an interview with Wallen to discuss the second grievance. (SMF, ¶ 31). Given the extended delay, the failure to receive an appeal form, and the clear untimeliness of the interview request, Wallen denied the request for interview.

More months passed before Gray filed a third grievance on August 13, 2024. (*Id*. ¶ 33). Because this grievance was repetitive of the previously filed grievances and was untimely, Wallen returned the grievance to Gray. This was Gray's seventeenth grievance, which Wallen believes demonstrates Gray's firm understanding of the requirements of the Grievance Process. (*Id*. ¶ 25). Based on these facts, Defendant moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions in file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials it its own pleading but must "marshal and present the court with the evidence [they] contend will prove [their] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th. Cir. 2010).

## DISCUSSION

4

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). This process allows prison officials an informal way to resolve disputes that incarcerated individuals may have before they are brought in front of a court. This exhaustion requirement "applies to all inmate suits about prison life," including general circumstances and specific occurrences. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "A suit filed by a prisoner before administrative remedies have been exhausted must be dismissed." *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). Nevertheless, "failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarthy*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson,* 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. *Id*. But inmates are only required to exhaust administrative remedies that are made "available" to them. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). To be sure, a prisoner cannot argue that a remedy is unavailable when the prisoner causes the unavailability of the grievance process by not filing a grievance in a timely manner. *Kaba v. Stepp*, 458 F.3d 678, 684. (7th Cir. 2006). But a prisoner may argue that a remedy is unavailable when a prison official prevents an inmate from properly accessing the administrative remedy and the "on paper" remedy is no longer in reality "available." *Id*.

Defendant's motion seeks summary judgment asserting that none of the three grievances filed by Gray were fully exhausted. The Court agrees and can easily dispense with two of those grievances. Gray's first grievance was filed within the ten business day window, but the grievance was rejected because it listed multiple dates instead of one date. (ECF 15-4, at 1). And Gray's third grievance was a duplicate of the first grievance, so it was not acted upon. (ECF 15-6, at 1). Neither

5

of these grievances went through the entire Grievance Process as outlined above. Gray took no further action on either grievance after their submission to a Grievance Specialist. Therefore, summary judgment is appropriate for Gray's first grievance and third grievances.

This leaves the second grievance. Defendant argues that Gray failed to exhaust. Gray counters that he exhausted all the remedies available to him, and Wallen's failure to respond to Gray's grievance in a timely manner made some remedies unavailable. Gray further contends that additional facts show he did all he could to exhaust the remedies available to him.

As noted in the facts above, Gray timely submitted his second grievance on June 18, 2024. But Wallen did not respond to Gray's second grievance within the ISP's guideline of fifteen business days. In fact, it took more than four months for Wallen to respond. But this delay is irrelevant. The Grievance Process accounts for situations where prisoner grievances do not receive a timely response. After twenty business days passed, Gray was permitted to appeal to the Warden/designee as if the grievance were denied. He did not. The record contains no evidence that Gray ever attempted an appeal – either because of a non-response or after Wallen issued the Notice. The record is devoid of State Form 45473, "Grievance Appeal" which was necessary for Gray to appeal.

Gray insists that the only reason he did not exhaust all administrative remedies was because Wallen made administrative remedies unavailable by failing to respond in a timely manner. Gray cites *Cannon v. Washington*, which held that a prisoner could raise his *fully exhausted* claims by amending an already pending complaint in lieu of initiating a new proceeding. 418 F.3d 714, 719 (7th Cir. 2005). But Gray is not seeking to amend his complaint. Instead, Gray wants to prove that he fully exhausted his claims and was only stopped by Wallen's untimely response. *Cannon* does not address this scenario. And even if Wallen did not respond in a timely manner, Gray still had

available remedies he did not pursue. The fact that Wallen did eventually respond on October 22, 2024, has no relevance to Gray's argument.[5]

Gray also cites another case from this district, *Bennett v. Hyatte*, to argue that ISP, like the Miami Correctional Facility in *Bennett,* had fifteen (15) days to respond. No. 3:21-CV-550 RLM-MGG, 2023 WL 5223192, at \*6 (N.D. Ind. Aug. 15, 2023). Gray is correct, but that does not change the fact that Gray still failed to appeal in the absence of a response. In *Bennett,* unlike here, the plaintiff argued that he received conflicting information regarding the appeals process from multiple prison officials. Because of this conflicting information, Bennett claimed that he was frustrated in his attempts to appeal. But here, the evidence is far different. Gray does not argue that he received any conflicting information from any prison official. Nor does he assert that but for the conflicting information he would have exhausted his administrative remedies. Without such evidence, Gray has nothing to overcome Defendant's motion for summary judgment. *See Goodman*, 621 F.3d at 654 (party opposing summary judgment bears the burden to "marshal and present the court with the evidence [they] contend will prove [their] case.").

In a final attempt to stave off summary judgment, Gray takes issue with the rules themselves. He cites *Miles v. Anton*, which held that grievance system rules must be written clearly if the grievance system is to function predictably and meaningfully. 42 F.4th 777, 782 (7th Cir. 2022). Indeed, vague or confusing grievance provisions open to multiple interpretations can sow distrust among prisoners and undercut the benefits of the grievance system. *Id*. But Gray fails to point out any rule here that is unclear. In fact, the opposite is true. The relevant rule here allowed

---

[5] The Offender Grievance Process policy clearly states that Gray could appeal after twenty (20) business days if he received no response from Wallen. (ECF 15-2, Ex. A-1, P. 12). The policy continues that Wallen *may* seek approval for a time extension by submitting the request to the Warden/designee. (*Id*.) The Warden/designee then would review the request and send Wallen a responding email either approving or denying the requested extension. (*Id*.) If Wallen were to have received an extension, he would have been required to notify Gray in writing about the extension and its length. (*Id*.) There is no evidence Wallen sought an extension.

Gray to deem his grievance denied and appeal. Gray, who is no stranger to the grievance process, just did not do so. Simply put, nothing about the rules prevented him from exhausting all administrative remedies.

In sum, Gray had the opportunity to exhaust all administrative remedies. After twenty (20) business days passed following the submission of his grievance without a response, he could have appealed to the Warden/designee as if his grievance were denied. He did not. Nor did he attempt to complete the final step by escalating to the Department Grievance Manager. The rules were clear and Gray did not follow them. Thus, Gray failed to exhaust all administrative remedies available to him and cannot bring this claim to this Court.

## **CONCLUSION**

Defendant's motion for summary judgment (ECF 15) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant.

**SO ORDERED** on June 17, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT